430 So.2d 1279 (1983)
STATE of Louisiana
v.
Lucien ALBERT.
No. 82 KA 0841.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
*1281 Jack T. Marionneaux, Asst. Dist. Atty., Plaquemine, for plaintiff.
William C. Dupont, Plaquemine, for defendant.
Before LOTTINGER, COLE and CARTER, JJ.
LOTTINGER, Judge.
Defendant, Lucien Albert, was charged with the crime of production of marijuana, La.R.S. 40:967.[1] After a jury trial, he was found guilty and sentenced to three years at hard labor. Defendant urges seventeen assignments of error on appeal.

FACTS
On September 7, 1980, several agents of the Department of Wildlife and Fisheries, while searching for out-of-season hunters, came across defendant and two other individuals in a patch of marijuana (10-12 foot plants) growing in a clearing in the woods. After the agents identified themselves and called to the men to stop, the subjects ran through the woods leaving behind a stepladder and some gardening tools. The agents chased them on foot and caught the defendant.
Albert was charged by a bill of information on October 10, 1980, with the production of marijuana. At the arraignment on October 10, 1980, the defendant pled not guilty and a trial date was set for May 6, 1981. After hearings were held on several preliminary motions filed by defendant, trial began on that date. Six jurors (out of a total of twelve) had been selected when the prosecutor informed defendant and his counsel that he intended to introduce at trial an inculpatory statement made by defendant. Defense counsel objected on the ground that he had not been furnished this statement despite discovery requests aimed at such evidence. He asked for a continuance or alternatively a mistrial. At the end of a lengthy and somewhat heated discussion the prosecutor decided to enter a nolle prosequi; besides being angry, the prosecutor was concerned about possible prejudice to defendant.
A second bill of information, identical to the first, was filed on May 15, 1981. Defendant was again arraigned on July 1st, and again pled not guilty. On September 15, 1981, defendant filed several motions, one of which urged the quashing of the indictment due to an abridgement of his right to a speedy trial.
On October 28, 1981, trial began again. All twelve jurors were selected, and the *1282 state called several witnesses to testify. When trial resumed the next day, one of the jurors reported to the judge that he had seen boxes of evidence bearing defendant's name outside of the courtroom, and had spoken to one of defendant's accomplices about the case shortly after the arrest. Concerned about the juror's ability to remain impartial and his possible influence upon the rest of the jury, the judge declared a mistrial. Defense counsel stated that he had no objections to this action, nor did he have any motions to make.
On December 10, 1981, the third trial date was set for April 15, 1982. Defendant filed another motion to quash on February 26, 1982, reiterating his earlier claims, including the asserted deprivation of his right to a speedy trial. The motion was denied. Trial was held and completed on April 15 and 16, 1982, resulting in defendant's conviction.

ASSIGNMENT OF ERROR NO. 1
As assignment of error No. 1, defendant claims that he has been placed twice in jeopardy for the same offense. Defendant argues that both of the trials which commenced after the initial nolle prosequi violated his constitutional right not to be placed in double jeopardy, and therefore the effects of both the nolle prosequi and the mistrial must be considered.
Defendant contends that jeopardy attaches in a jury trial when the first juror is sworn; therefore, after three jurors had been empanelled, jeopardy forestalling another trial had attached. We find no authority for this argument. The federal rule (which applies also to the states) as expressed in Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), is that jeopardy attaches when the jury is empanelled and sworn; Crist does not address the issue of a partial jury selection. In State v. Sermon, 404 So.2d 261 (La.1981), the Supreme Court found that the selection and swearing in of three jurors was insufficient to trigger the attachment of jeopardy prior to the declaration of a mistrial by the trial court.[2] Since the prosecution of this offense must necessarily be before a twelve member jury, the choosing of six jurors is not sufficient to trigger the attachment of jeopardy.
Unquestionably, jeopardy had attached in this matter after the mistrial was declared on October 29, 1981. La.Code Crim.P. art. 591 defines the situations when an accused can be tried again for the same offense, one of which is when a mistrial is ordered with the express consent of the defendant. The failure of defendant to object to a mistrial is deemed to be an acquiescence in its ruling which bars subsequent complaint that the court-ordered mistrial violated his double jeopardy rights. La. Code Crim.P. art. 775, comment (d); State v. Lawson, 338 So.2d 627 (La.1976).
The trial court asked defense counsel specifically if he had any objections to the declaration of a mistrial, and he replied that he had none. We find this case falls under the rule of Lawson, supra, and not under State v. Simpson, 371 So.2d 733 (La. 1979), where the court distinguished Lawson on the facts present there and found no consent from the defendant's silence. We deem the defendant's silence here to be an acquiescence and thus a consent to the mistrial order. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant asserts that his right to a speedy trial was violated.
Initially we note that the final trial was commenced within the two-year period set out in La.Code Crim.P. art. 578. Defendant *1283 was billed on October 10, 1980, and the third and final trial was commenced on April 15, 1982.
That this time limitation was not breached is not dispositive of defendant's claim. In State v. Alfred, 337 So.2d 1049 (La.1976), the Supreme Court adopted the flexible approach espoused in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to examine a speedy trial claim. This test includes the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice which the defendant has suffered. In addition, the peculiar circumstances of each case will determine the weight given to these factors.
The length of the delay here was not inordinate. A little more than nineteen months elapsed between the time of defendant's arrest and the beginning of the final trial. The crime defendant was charged with and found guilty of is a serious offense, one which exposed defendant to a possible ten year sentence, a $15,000 fine, and mandatory hard labor if imprisonment was imposed. This was no "ordinary street crime" or "simple misdemeanor" which would invoke a constitutional requirement for a relatively brief delay.
The reasons for the delay indicate no purposeful attempt on the state's part to prejudice defendant or to simply foot-drag. The periods of time between the two arraignments and the later trials were presumably set according to the time table of that district's regular docket and are not unusually long. The two unfinished trials were aborted with the defendant's interest in mind. The May 7, 1981, nolle prosequi was entered because of defendant's claim that he was surprised by an inculpatory statement made by him which the prosecutor intended to use. The trial judge declared a mistrial on October 29, 1981, because he believed the jury had been influenced by outside factors; the defendant acquiesced in that action. The defendant also filed several motions (to suppress evidence, to quash because of double jeopardy) that tended to slow the process or at least justify the delays between the arraignments and the subsequent trials.
Defendant did assert his right to a speedy trial twice by motion to quash: first on September 15, 1981, after the nolle prosequi and second arraignment and before the second trial, and secondly on February 26, 1982, four months after the mistrial. On both occasions defendant was brought to trial within a month and a half after the motions were made.
Defendant has not indicated how the delay prejudiced his defense to the charges. He also has not shown how the delay has affected his personal liberty, if at all, aside from the assertion that extra legal expenses were incurred. The motions he filed (aside from the speedy trial motions) could not but have added to those expenses. The cost of his defense is not sufficient, alone, to show the amount of prejudice needed to uphold his claim of denial of a speedy trial, with its drastic remedy of outright release of defendant.
Neither do the other factors weigh in favor of a finding that his right to a speedy trial was violated; this assignment therefore lacks merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 5
In assignments of error Nos. 3 and 5, defendant contends that the trial court erred in restricting his inquiry into matters relating to actions or assumptions of the police officer who took defendant into custody. The state's objections were sustained to various questions. There were no contemporaneous objections to the rulings, and the alleged errors cannot be raised on appeal. La.Code Crim.P. art. 841; State v. Johnson, 404 So.2d 239 (La.1981). These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 4
As assignment of error No. 4, defendant urges that the trial court committed *1284 error in not allowing defense counsel proper impeachment of witness Hoffman.
After the state objected to the lack of foundation for impeachment, the court, after lengthy discussion, and over the state's objection, permitted defendant to introduce prior statements made by the witness. Copies of the statements were circulated to the jury. The next day defense counsel questioned the witness closely about these statements, and was given the unrestricted opportunity to impeach the witness or inform the jury of the prior inconsistent statement. This assignment of error has no merit.

ASSIGNMENTS OF ERROR NOS. 6, 7, 9 AND 10
By these assignments of error defendant urges that the trial court erred in admitting into evidence an allegedly irrelevant and prejudicial photograph of defendant taken the day he was arrested; in not admitting into evidence a shotgun which defendant claims was relevant to support his defense that he was in the woods hunting at the time of his arrest; in permitting a state witness to testify as to whether or not he had seen defendant's vehicle on the property next to where he was arrested; and in allowing photographs of plants which were alleged to be those found at the scene of arrest into evidence. The trial court has wide discretion in determining the relevancy of evidence, and its determination will not be overturned absent a clear abuse of that discretion. State v. West, 419 So.2d 868 (La.1982). We find no such abuse and therefore no merit in these assignments of error.

ASSIGNMENTS OF ERROR NOS. 8 AND 12
By these assignments of error, defendant alleges that the chain of custody by which the evidence seized at the site of the arrest was presented to the court was defective.
A showing of a continuous chain of custody is not essential to the introduction of physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced is the same as the object originally seized by the officer. State v. Davis, 411 So.2d 434 (La.1982). The testimony of Mr. Jerry Harrison, the State Police employee who examined the plants, outlined the procedures used by the crime laboratory to identify the evidence and sustain the chain of custody. We find no error in the admission of the testimony of Mr. Harrison, nor of the plants examined by him.

ASSIGNMENTS OF ERROR NOS. 11 AND 13
As to assignment of error No. 11, defendant urges that the trial court committed error in allowing Brent Barbier (a police detective) to testify.
At the beginning of the trial, the defendant requested that the witnesses be sequestered, and the court so ordered. Detective Barbier was not present at the inception of the trial and was not informed of the sequestration rule. Defendant objected to Detective Barbier's testimony, and the court conducted a hearing to determine the effect, if any, of the lack of notice on his part of the rule. At the hearing, the court adduced that Detective Barbier had not been in the courtroom when the other witnesses testified, and had not discussed his testimony with anyone since the trial began. The court then overruled defendant's objection to the witness and permitted him to testify. Although his testimony was not limited by the court, it related only to the chain of evidence connected with the seizure of the evidence material for defendant's trial.
As to assignment of error No. 13, defendant argues that the trial court erred in limiting his wife's testimony. After defendant was surprised by testimony by one of the state's witnesses, defense counsel advised the court that he wished to call defendant's wife to the stand to rebut this testimony. Defendant had not anticipated *1285 the necessity for her testimony, and therefore Mrs. Albert had not been placed under the rule of sequestration.
The State objected to the testimony of Mrs. Albert since she had been present in the courtroom during the trial. After hearing discussion from both the state and defendant, the court permitted defendant to call Mrs. Albert, but limited her testimony to a rebuttal of the testimony which surprised defendant, with the proviso that the defense could question her on re-direct as to any matters the state brought out on crossexamination. Defendant urges that by limiting her testimony, the defendant's right to present his defense was abridged.
La.Code Crim.P. art. 764 provides for the sequestration of witnesses. The code specifically provides that a sequestration order, once rendered, may be modified by the court in the interest of justice.
The court acted within its discretion in modifying the sequestration order to permit a witness for the defense, as well as a witness for the state, to testify. The court obviously felt that the testimony of Detective Barbier, concerning his actions relative to the evidence, could not have been tainted since he was not present in the courtroom during the taking of evidence, and because no one else would testify as to those actions. The court also felt it necessary to limit defense witness's testimony since she was present in the courtroom during the trial. The court felt that the interest of justice would be served by permitting her to testify in rebuttal to the surprise testimony but, since she had not been originally called as a witness, and had not been under the rule, that in fairness to the state she could not testify as to any other matter. This determination is clearly within the discretion granted to the trial judge in Article 764, and these assignments of error have no merit.

ASSIGNMENT OF ERROR NO. 14
By this assignment of error defendant urges that the trial court erred in permitting the state to refer to items which had not been admitted into evidence. Although the items were not received into evidence, sworn testimony by several witnesses related to these items. The ruling of the trial court in this regard did not affect substantial rights of the defendant; therefore there is no reversible error. State v. West, supra; La.Code Crim.P. art. 921.

ASSIGNMENT OF ERROR NO. 15
As to assignment of error No. 15 defendant urges that the court committed error in not allowing special charge No. 1. This charge reads:
"I charge that in order to convict for production of marijuana, it must be shown beyond a reasonable doubt, that the defendant knowingly and intentionally produced marijuana with intent to distribute or dispense it."
Defendant argues that under La.R.S. 40:967 A (1) it is unlawful to produce marijuana only if such production is done with the intent to distribute or dispense it; in the alternative, if this interpretation is not correct, the statute is unconstitutionally vague.
We find no merit to defendant's argument. The Legislature clearly intended to make the production of marijuana (with the specific intent to do so) unlawful, and we find no vagueness or ambiguity in the statute. The trial court need not give a specific requested charge if it is not wholly correct, or if it is included in the general charge. La.Code Crim.P. art. 807; State v. Green, 418 So.2d 609 (La.1982). The trial court did not err in refusing to give this charge to the jury.

ASSIGNMENT OF ERROR NO. 16
As assignment of error No. 16, defendant urges that the trial court committed error in not reading the penalty clause to the jury. La.Code Crim.P. art. 802 specifies the charges which the trial court shall make to the jury, and does not *1286 require the reading of the penalty provision. The general rule in this state is that the jury need not be told of the applicable penalty on conviction because the imposition of sentence is solely within the province of the judge, and is not a function of the jury, which is concerned with the guilt or innocence of the accused. State v. Blackwell, 298 So.2d 798, (La.1974), on rehearing; State v. Prater, 337 So.2d 1107 (La.1976). The jury must be informed of the penalty only when the statutory offense requires a mandatory legislative penalty with no judicial discretion as to its imposition following the verdict. State v. Washington, 367 So.2d 4 (La.1978). The penalties applicable to the production of marijuana, at the discretion of the trial court, include imprisonment at hard labor up to ten years, and a possible fine of not more than $15,000. The trial court did not commit error in failing to include the penalty provisions in the jury charges. This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 17
Defendant assigns as error here that the evidence at trial is insufficient to sustain the verdict. This assignment was not briefed and is thereby considered abandoned. State v. Perry, 420 So.2d 139 (La. 1982); Uniform Rules of the Courts of Appeal, Rule 2-12.4.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The bill of information did not cite the statute outlawing the production of marijuana, which at that time was La.R.S. 40:967. The defendant, the state, and trial court, however, all indicated throughout trial and on appeal that they were aware of the relevant statute, and thus we find no reversible error patent on the face of the record. La.Code Crim.P. art. 464.
[2] La.Code Crim.P. art. 592 has been effectively amended by Crist v. Bretz, supra. See State v. Sermon, supra.